## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMOS VEGA, Jairo, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **CIVIL ACTION** |
| JAMISON, J.L., Warden, Federal Detention | : | |
| Center, Philadelphia; RIFE, John E., Acting | : | |
| Field Office Director, Immigration and | : | |
| Customs Enforcement, Enforcement and | : | |
| Removal Operations, Philadelphia Field Office; | : | **No. 26-4509** |
| MULLIN, Markwayne, Secretary of the | : | |
| Department of Homeland Security; BLANCHE, | : | |
| Todd, Acting U.S. Attorney General; U.S. | : | |
| DEPARTMENT OF HOMELAND SECURITY; | : | |
| EXECUTIVE OFFICE FOR IMMIGRATION | : | |
| REVIEW, | : | |
| | : | |
| Respondents. | : | |

Perez, J.                                                                                          **July 2, 2026**

### MEMORANDUM

Petitioner Jairo Ramos Vega is among hundreds of noncitizens who have lived and worked in the United States for years but whom the government has determined must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) until they can be removed, regardless of whether they are a danger to the community or a flight risk. Like countless others seeking court intervention to protect their rights, Petitioner seeks a writ of habeas corpus ordering his immediate release. For the reasons discussed below, Petitioner is not subject to mandatory detention under § 1225(b)(2)(A). Instead, his detention is governed by § 1226. The Court therefore grants the petition and orders Petitioner's immediate release from detention.

Petitioner is a 25-year-old noncitizen who entered the United States around 2020. ECF No. 1 ¶ 1, 17. For over five years, he has lived in Lansdale, Pennsylvania, with his brothers. *Id.* ¶ 1. On June 29, 2026, Department of Homeland Security (DHS) officials arrested Petitioner and his two brothers while they were on their way to work. *Id.* ¶ 20. On June 30, 2026, Petitioner filed this Petition for Writ of Habeas Corpus, seeking immediate release from detention. ECF No. 1. On July 1, 2026, Respondents timely filed a response, arguing Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and that his detention does not violate due process. ECF No. 4. Respondents are wrong.

Respondents acknowledge that their position that Petitioner is subject to mandatory detention without a bond hearing under § 1225(b)(2)(A) has been categorically rejected by the vast majority of district courts, as well as the Second, Sixth, and Eleventh Circuits. See ECF No. 4 at 3; *see also Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). This Court likewise rejects Respondents' position.

Individuals like Petitioner, who have lived in the United States for years, are not subject to mandatory detention under § 1225(b)(2)(A). A non-citizen is only subject to mandatory detention under § 1225(b)(2)(A) if he (1) is an "applicant for admission"; (2) is "seeking admission"; and (3) is "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) (Wolson, J.). "'Seeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization." *Kashranov*, 2025 WL 3188399, at *6. It does not describe individuals who have been in the United States for several years. *Id.* Petitioner was seeking

admission in 2020 when he arrived at the United States border. He is no longer seeking admission now. Section 1225(b)(2)(A), therefore, does not apply.[1] Respondents nevertheless contend that two recent Supreme Court decisions undermine this conclusion. They do not.

The Court writes to address these decisions, which Respondents argue lend support to their argument that "applicant for admission" and "seeking admission" are not two distinct requirements under § 1225(b). ECF No. 3 at 4 (citing *Blanche v. Lau*, No. 25-429, 609 U.S. ___, ___ S. Ct. ___, 2026 WL 1791339 (U.S. June 23, 2026); and *Mullin v. Al Otro Lado*, No. 25-5, 609 U.S.___, ___S. Ct. ___, 2026 WL 1825741 (U.S. June 25, 2026)). Neither decision addressed the question presented here, and neither alters the plain meaning of § 1225(b)(2)(A).

*Lau* involved a Chinese citizen and lawful permanent resident of the United States who left the country after being charged with a crime. 2026 WL 1791339, at *2. Upon his return, the border officer declined to regard him as admitted due to the pending charges and paroled him into the country. *Id.* After he pled guilty to the criminal charges, the noncitizen was ordered removed. *Id.* The question before the Court in *Lau* was whether a lawful permanent resident who has committed a crime of moral turpitude may "be regarded as seeking admission"—as opposed to admitted—or

---

[1] *See, e.g.*, *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, et al.*, 175 F.4th 1258 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft, et al.*, 175 F.4th 713 (6th Cir. 2026); *Ramirez v. Bondi*, No. 26-0522, 2026 WL 321442 (E.D. Pa. Feb. 6, 2026) (Rufe, J.); *Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 196505 (E.D. Pa. Jan. 26, 2026) (Kenney, J.); *Restrepo v. Jamison*, No. 2:25-cv-6518, 2026 WL 141803 (E.D. Pa. Jan. 20, 2026) (Leeson, J.); *Chavez v. McShane*, No. 25-6968, 2026 WL 120671 (E.D. Pa. Jan. 16, 2026) (Costello, J.); *Muzofirov v. Jamison*, No. 25-7371, 2026 WL 126153 (E.D. Pa. Jan. 16, 2026) (Scott, J.); *Kanaut v. Rose*, No. 24-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026) (Hodge, J.); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025) (Beetlestone, J.); *Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432 (E.D. Pa. Dec. 18, 2025) (Padova, J.); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025) (Bartle, J.); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Rodriguez Pereira v. O'Neill*, No. 25-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025) (Marston, J.); *Juarez v. O'Neill*, No. 25-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025) (Henry, J.); *Nogueira-Mendes v. McShane*, No. 25-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); *Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025) (Brody, J.); *Diallo v. O'Neill*, No. 25-6358, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *Morocho v. Jamison*, No. 25-cv-05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Espinal Rosa v. O'Neill*, No. 25-cv-6376 (E.D. Pa. Nov. 25, 2025) (Weilheimer, J.); *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025) (Sanchez, J.); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (Diamond, J.).

whether he may only be regarded as such after conviction. *Id.* at \*4. The Court held he could be regarded as seeking admission before conviction. *Id.*

Lawful permanent residents are generally regarded as already admitted to the country. Section 1101(a)(13)(C), however, provides that a lawful permanent resident "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless [he] . . . has committed an offense identified in section 1182(a)(2) of this title." That section then provides that a noncitizen "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. §1182(a)(2)(A)(i). Being "regarded as seeking admission" was important to Lau because if still "regarded as seeking admission," he would be inadmissible based on his conviction for a crime of moral turpitude, but if "admitted," he would only be deportable if he committed the crime within five years of his admission. *Lau*, 2026 WL 1791339, at \*3 (citing § 1182(a)(2)(A)(i)(I); and § 1227(a)(2)(A)(i)).

Putting the two statutes together, the Court broke down the question into two steps: at step one, the government may regard a lawful permanent resident as "an alien seeking admission" based on his commission of a crime involving moral turpitude before attempting to reenter the country; and at step two, the government may deem him inadmissible and removable based on his conviction of the crime involving moral turpitude. *Lau*, 2026 WL 1791339, at \*4. In other words, no conviction is required at step one—commission is enough—and the government has no heightened burden at the time of reentry for determining he actually committed the crime. *Id.* at \*5–6.

In *Al Otro Lado*, meanwhile, the Court was faced with the question of "whether [a noncitizen] who seeks to enter the United States from Mexico 'arrives in the United States' when

he or she is still in Mexico." 2026 WL 1825741, at *3. Put simply, whether the government could prevent a noncitizen from applying for asylum by physically stopping them from setting a foot on U.S. soil. *Id.* at *14 (Sotomayor, J., dissenting). The Court applied an "ordinary-meaning reading," holding that a noncitizen "'arrives' in the United States' only when he crosses the border." *Id.* at *3, *6.

Of course, Respondents do not rely on those holdings—they are inapplicable here. Instead, they craft "arguments from the Court's wording rather than the reasoning or holdings, . . . indicat[ing] the relative weakness of the connection." *Gonzales Cardona v. Jamison*, No. 26-4430, 2026 WL 1878606, at *2 (E.D. Pa. June 30, 2026) (Henry, J.); ECF No. 4 at 6. Respondents argue that *Lau* "used the phrase 'applicant for admission' interchangeably with 'seeking admission' in analyzing 8 U.S.C. § 1101(a)(13)(C), and *Al Otro Lado* "used the phrase 'seeking admission' to characterize all applicants for admission." ECF No. 4 at 6. In Respondents' view, that word choice should guide the outcome here. It does not.

The facts of *Lau* and *Al Otro Lado* did not present the Court with the occasion to distinguish between "applicant for admission" and "seeking admission" because every noncitizen in those cases was actively attempting to enter or reenter the United States at the border. Lau was attempting to reenter the country at the border at the time the government deemed him "seeking admission," *Lau*, 2026 WL 1791339, at *2, and the noncitizens in *Al Otro Lado* sought to access the asylum process by presenting themselves at the U.S. border but were denied inspection because they still stood on the Mexico side of the border. 2026 WL 1825741, at *5. The Court's usage of both terms interchangeably on those facts—with noncitizens actively seeking admission to the United States—do not extend to the facts here. Petitioner was not at the border seeking admission when DHS officials arrested him.

Moreover, the applicable section of the statute in *Lau* does not explicitly refer to "applicants for admission." *See* § 1101(a)(13)(C). Accordingly, any distinction between the two phrases would have been irrelevant to resolution of the issues before the Court.

Finally, with respect to Respondents' argument that *Al Otro Lado* "rejected reliance on the anti-surplusage canon to draw distinctions in the INA," ECF No. 4 at 6, that is an oversimplification of the Court's analysis. The Court explained that "[t]he anti-surplusage canon is useful, but it is subordinate to the cardinal canon that a legislature says in a statute what it means and means in a statute what it says there." *Al Otro Lado*, 2026 WL 1825741, at *8 (cleaned up). It did not, however, do away with the anti-surplusage canon as a whole in the context of the INA. *See id.* at *9 ("[T]he redundancy that troubled the Ninth Circuit is understandable. At any rate, if forced to choose between an interpretation that entails some redundancy and one that contradicts what words usually mean, we would choose the former.").

This Court (and countless others) have analyzed § 1225 to determine its plain meaning. Section 1225(b)(2)(A) provides: "[I]n the case of an alien who is **an applicant for admission**, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "Applicant for admission" is defined by the statute to mean a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The phrase "seeking admission" is not defined in the statute. Admission is. It means "lawful entry . . . after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" means the "coming of an alien into the U.S. from a foreign part or place or from an outlying possession, whether voluntary or otherwise." Entry, Black's Law Dictionary (6th ed. 1990). This describes a physical entry, not solely a legal one.

Meanwhile, "seek" means "to try to acquire or gain." *Kashranov*, 2025 WL 3188399, at *6 (quoting Seek, Merriam-Webster's Collegiate Dictionary (10th ed. 1996)). The use of the present participle indicates "active and ongoing conduct." *Id.* Putting all of those definitions together, then, "seeking admission" within § 1225(b)(2)(A) means: actively trying to gain physical entry into the United States for inspection by an immigration officer. *Kashranov*, 2025 WL 3188399, at *6; *see also Lopez-Campos*, 175 F.4th at 723 ("for a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer. Noncitizens like Petitioners, who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry, are not 'seeking admission' and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme."). Neither *Lau* nor *Al Otro Lado* changes that outcome.

The anti-surplusage reasoning courts have relied on to analyze § 1225(b)(2)(A) does not conflict with the plain meaning analysis. It provides further support. *See, e.g.*, *Lopez-Campos*, 175 F.4th at 722–23 (analyzing plain meaning of § 1225(b)(2)(A) and then looking to anti-surplusage canon as "further support[]").

Accordingly, for the same reasons set forth in *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025), and *Kashranov*, 2025 WL 3188399, which the Court adopts herein, 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner. Section 1226(a) applies. Individuals detained under §1226(a) are entitled to seek a bond hearing before an Immigration Judge. Petitioner's detention without a bond hearing is, therefore, unlawful, and he is entitled to habeas relief. The appropriate relief for unlawful detention is immediate release.

An appropriate Order follows.